IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

A.F.,

               Plaintiff,                                     Civ. No. 6:18-cv-1404-SI
                                                          (Lead Case)

          v.                                         OPINION AND ORDER

CHRISTOPHER EVANS, et al.,

               Defendants.

E.F.,

               Plaintiff,                                     Civ. No. 2:19-cv-1056-SI

          v.                                         OPINION AND ORDER

CHRISTOPHER EVANS, et al.

               Defendants

_____

MCSHANE, Judge:

      After years of litigation, Plaintiff A.F. obtained a stipulated judgment of $875,000 against the state defendants. Plaintiff E.F. obtained a stipulated judgment of $675,000 against the state defendants. The parties agree that Plaintiffs are the prevailing parties. They do not agree as to the amount of reasonable attorney's fees Plaintiff's attorneys are entitled to. A.F. seeks $1,770,543

1 – OPINION AND ORDER

in fees and $162,810.91 in costs (before interest). ECF No. 317, 2. E.F. seeks $417,915 in fees, $2925 in expert fees to support his motion for fees, and $9,587 in costs. ECF No. 310, 2.

The Ninth Circuit applies the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Id.* (citing *Hensely v. Eckerhart*, 461 U.S. 424, 433 (1983)). A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986). Ordinarily, the court decides whether to enhance or reduce the lodestar figure by evaluating a set of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Blum v. Stenson,* 465 U.S. 886, 897 (1984). Accordingly, this District uses the Oregon State Bar 2017 Economic Survey as the initial benchmark when reviewing fee petitions.[1]

Defendants argue that because this is a Pendleton case, Plaintiffs' counsel may not base their rates off of rates charged by attorneys in Portland and Eugene. In support, Defendants argue that "[s]ince 2005, five lawyers from [the Pendleton Division] have filed six tort cases against ODHS." Kelley Decl. ¶ 10; ECF No. 328. From there, Defendants argue that nothing in this record indicates this matter was so novel or complex as to preclude Pendleton attorneys from adequately representing Plaintiffs. On this issue, however, Plaintiffs submit evidence

---

[1] The economic survey is available at https://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf.

demonstrating that although they sought to secure representation from Pendleton attorneys, they were unsuccessful. For example, Plaintiffs' father submitted a declaration stating that he sent several letters to attorneys in Baker City and Pendleton, and about 30-40 letters to attorneys around the state. ECF No. 335, ¶ 2. "The only person who wrote back was Steve Rizzo, and he connected me with Caitlin Mitchell." Id. at ¶ 4. Plaintiffs also submit a declaration from La Grande attorney Glenn Null. Null states that he is familiar with the case and represented Plaintiffs' grandfather:

> I have known Grandfather for many years. He runs a small appliance repair store in La Grande and is a person of modest means. I understand that the local bar expressed little or no interest in taking this case against ODHS.
>
> I believe that it was necessary for A.F. and E.F. to seek experienced counsel in Portland. La Grande is a small legal community. Mr. Dall and Mr. Burcart (retired) were named as defendants and other local attorneys were involved as witnesses. My firm does not have experience litigating a foster care abuse case against the Oregon Department of Human Services. I am not aware of a local law firm that has this experience and the ability to finance a case of this magnitude.

Null Decl. ¶¶ 5-6; ECF No. 321.

Although Defendants submit evidence that five Pendleton attorneys have filed six tort actions against ODHS in the past 17 years, there is nothing in the record indicating the nature or complexity of those cases. Even assuming those cases are similar in nature to the cases here, there is no evidence indicating any of those attorneys, whoever they may be, were available to take on these cases or are even alive today. The Court concludes Plaintiffs have established that because they could not find local counsel in this challenging case, they are entitled to recover rates based on Eugene and Portland rates.

Most of Defendants' arguments challenging the hourly rates focus on the argument, rejected above, that Plaintiffs are limited to recover based on Pendleton rates. A.F.'s attorneys

seek rates equivalent to the 75th percentile—when adjusted for inflation—of Portland attorneys with the same relevant experience. A.F. Motion, 4; ECF No. 317. E.F.'s attorneys seek rates in the average range for similarly experienced attorneys in the Willamette Valley and, with respect to Jennifer Middleton, rates between the 75th and 95th percentile. The Court finds all of the requested hourly rates to be reasonable. A.F. filed this action four years ago. Based on the father's declaration, no other attorney was interested in representing A.F. Counsel for both Plaintiffs agreed to be paid only in the event Plaintiffs prevailed. Plaintiffs submitted declarations of local attorneys who opined that, given the complexity of this case, the requested rates and hours are reasonable. ECF Nos. 315–16. Given the risks and the complexity of this action, the requested hourly rates are reasonable.[2]

Defendants' other objections fare no better.[3] They argue that any recovery should be offset from the settlement Plaintiffs reached with the non-state, attorney Defendants. The Court agrees with Plaintiffs that this argument comes much too late. The time to raise such an argument—technically, an affirmative defense of offset—was in its answer. And if not then, at least when Plaintiffs' asked Judge Simon to sign off on the stipulated settlement with the non-state, attorney Defendants. Instead, Defendants made no objection, deliberately choosing to remain silent and raise the offset argument at this late stage. The Court agrees with Plaintiffs that

---

[2] The Court also finds rates of $225 and $200 for A.F.'s paralegals to be reasonable. In making this finding, the Court reviewed Mr. Rizzo's extensive declaration noting the relevant experience of the respective paralegals. Rizzo Decl. ¶¶ 26–34; ECF No. 318. Additionally, the Court notes that the work conducted by these paralegals "was not merely clerical" and instead "required judgment" as laid out in Mr. Rizzo's declaration. Rizzo Decl. ¶ 26.

[3] Indeed, some of Defendants' arguments border on the absurd. For instance, Defendants argue Ms. Skjelset overstates her experience by claiming to have "15 years' experience." Def. Resp. 6; ECF No. 326. As Ms. Skjelset acknowledges in a declaration submitted to support the Reply, as of that filing, she did not actually have 15 years' experience. Instead, "[a]s of the date of this filing, I have been licensed for 14 years, 11 months and 28 days (including the end date). Because the OSB survey data does not differentiate between attorneys with 14 years 11 months licensure and those with 15 years, but instead grouped attorneys with 13-15 years' experience into a single category, I thought it appropriate to round up my experience in A.F.'s Motion for attorney fees, for the sake of brevity." Skjelset Decl. ¶ 5; ECF No. 340. The Court agrees.

4 – OPINION AND ORDER

allowing offset at this late stage would prejudice Plaintiffs who, had Defendants raised this argument earlier, would have taken steps to avoid being prejudiced. *See* Skjelset Decl. ¶ 18.

Defendants also argue Plaintiffs should not recover for any time spent in furtherance of the claims against the non-state, attorney Defendants. In support of this argument, Defendants make a strained argument that those claims were unrelated to the claims against the state Defendants. The Court agrees with Plaintiffs that the theories as to the non-state, attorney Defendants was that those Defendants colluded with the state Defendants in seeking to place the children with Campbell, "whom all defendants knew and/or should have known was unsafe." A.F. Reply, 4; ECF No. 339. The Court agrees with Plaintiffs that "this 'theory' was borne out by email communications (eventually) produced after significant delay and extensive (but necessary) discovery efforts, and by testimony elicited at deposition." A.F. Reply, 4. Additionally, any discovery related to the non-state, attorney Defendants was crucial to defend against the state Defendants' argument, first raised several years into litigation, that those attorneys were contributorily negligent for any DHS liability. As the theories against the non-state, attorney Defendants were intertwined with, and "involve[d] a common core of facts" with the claims against the state Defendants, Plaintiffs are entitled to recover those hours. *Hensely*, 461 U.S. at 435.

This case was hard fought, by attorneys on all sides. The Court, however, notes that Defendants continually took a strange view, in the Court's eyes at least, of the facts. Despite the fact that this was not a case with qualified immunity as a viable defense, Defendants maintained that defense until Judge Sullivan eventually rejected it at summary judgment. At oral argument, Judge Sullivan commented "I don't think defendants have a very strong case on qualified immunity. I think this case is going to go to trial." Rizzo Decl. ¶ 89. Judge Sullivan also noted,

5 – OPINION AND ORDER

"I've looked at the facts, I've looked at the issues, and I'm frankly quite disappointed in the state's behavior and the way the litigation has been conducted." Rizzo Decl. ¶ 89. Based on this Court's four settlement sessions with the parties, the Court agrees with Judge Sullivan's assessment. All the way back at the first settlement conference several years ago, the Court candidly informed Defendants that they could settle then to avoid millions in attorney's fees several years later, after qualified immunity was off the table. As noted, Defendants had much a different view of the evidence and the law on qualified immunity.

To summarize, the Court has waded through Plaintiffs' attorneys' remarkably detailed declarations and billing summaries. Specifically, Mr. Rizzo's 32-page declaration at ECF No. 318 was a great aid in understanding the complex history of the case, the parties, the goals of discovery (and the corresponding roadblocks), and walking the Court through the litigation-as-a-whole. The Court concludes Plaintiffs have established all of the hours sought were reasonably spent advancing claims Plaintiffs ultimately prevailed on. In short, Plaintiffs' attorneys obtained excellent results for their clients. Defendants do not object to any of the requested costs, or to an award of prejudgment interest. Although the Court declines to enhance either Plaintiff's award of fees, it concludes Plaintiff A.F. is entitled to $1,770,543 in fees, $229,425.12 in costs, and $16,822. to prepare its Reply. Plaintiff E.F. is entitled to $417,915 in fees, $9,587. in costs (plus an enhancement of 9%), and $2925. in fees for Nadia Dahab and Ashlee Albies.

IT IS SO ORDERED.

DATED this 30th day of December, 2022.

/s/ Michael J. McShane
Michael McShane
United States District Judge

6 – OPINION AND ORDER